IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

NICOLE L. HART-MURCHISON                                        PLAINTIFF

v.                              Civil No. 11-2047

MICHAEL J.  ASTRUE, Commissioner
Social Security Administration                                 DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Nicole Hart-Murchison, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

I.      **Procedural Background:**

The plaintiff filed her application for SSI on July 25, 2007, alleging an onset date of July 1, 2007, due to lower back pain, asthma, anxiety disorder, depression, a learning disorder, borderline intellectual functioning ("BIF"), post-traumatic stress disorder ("PTSD"), and bipolar disorder.  Tr. 64-67, 106-107, 122-123, 772.   The Commissioner denied Plaintiff's application initially and on reconsideration. Tr. 46-47, 50-51.  An administrative hearing was held on December 18, 2008. Tr. 757-793.  Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 24 years old and possessed a high school education.  Tr. 763.  She had no past relevant work experience. Tr. 17.

On May 20, 2009, the ALJ found plaintiff's PTSD and bipolar disorder to be severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  Tr. 13-14.  After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform full range of

unskilled work at all exertional levels involving interpersonal contact with coworkers, public, and supervisors consistent with assembly work and no concentrated exposure to airborne irritants. Tr. 14-17. With the assistance of a vocational expert, the ALJ found plaintiff could perform work as a mail carrier, dishwasher, and hand packager. Tr. 17-18.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on June 17, 2010. Tr. 1-4. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 13, 14.

## II.   Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d

1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.    Discussion:

Of particular concern to the undersigned is the ALJ's conclusion that Plaintiff's BIF/learning disorder was non-severe. An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. *See Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *id.* at 158, 107 S.Ct. 2287 (O'Connor, J., concurring); 20 C.F.R. § 404.1521(a). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007).

BIF is a condition defined as an IQ score within the 71-84 range. *Hutsell v. Massanari,* 259 F.3d 707, 709 n. 3 (8th Cir. 2001). A diagnosis of BIF should be considered severe when the diagnosis is supported by sufficient medical evidence. *Hunt v. Massanari*, 250 F.3d 622, 625-26 (8th Cir. 2001).

In the present case, Dr. Leslie Johnson conducted a psychological evaluation of Plaintiff in 2003. Tr .152-154. I.Q. testing revealed a full scale IQ of 75. Tr. 152-154. *See Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001) (holding, absent evidence to the contrary, a claimant's intellectual functioning, a person's IQ is presumed to remain stable over time). Additional testing also indicated that Plaintiff read on a seventh grade level and possessed fifth grade mathematical skills. Tr. 152-154. These scores are further bolstered by Plaintiff's own testimony that she suffered from learning difficulties, resulting in her placement in special education classes from the third through the twelfth grades. In 2007, Dr. Robert Spray, Jr., evaluated Plaintiff and concluded that she would not be able to manage her own funds. Tr. 454-461. In 2008, Dr. Brent Witherington, at Perspective's Behavioral Health, also diagnosed Plaintiff with a learning disorder. Tr. 702.

In spite of this evidence, the ALJ failed to mention Plaintiff's diagnosis of BIF/learning disorder and did not make a specific finding as to its severity. *See Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (holding that the ALJ is not free to ignore medical evidence, rather must consider the whole record). Instead, she merely concluded that Plaintiff's PTSD and bipolar disorder were severe. Because Plaintiff was actually diagnosed with BIF, the ALJ erred in failing to include it in the list of severe impairments. *Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007). She also erred by failing to include limitations resulting from Plaintiff's BIF in the hypothetical question posed to the vocational expert. *See Lucy v. Chater,* 113 F.3d 905, 908 (8th Cir. 1997) (holding that borderline intellectual functioning is a significant nonexertional impairment that must be considered by a vocational expert). Accordingly, remand is necessary to allow the ALJ to reconsider Plaintiff's BIF.

AO72A
(Rev. 8/82)

We are also concerned by the ALJ's failure to develop the record with regard to Plaintiff's remaining mental limitations. The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure her decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). "An ALJ should recontact a treating or consulting physician if a critical issue is undeveloped." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted).

In the present case, the record reveals an extensive history of treatment for bipolar disorder, depression, anxiety disorder, and PTSD. Records reveal that Plaintiff had undergone treatment for her mental disorders since she was approximately 15 years of age. From 2004-2005, she was treated at Western Arkansas Counseling and Guidance Center ("WACGC"), where she underwent both therapy and medication management. Tr. 155-166, 371-388. In August 2005, she was hospitalized at Vista Heath, due to suicidal thoughts with a plan to kill herself. Tr. 355-369, 427-438, 550-562.

In 2007, Plaintiff was evaluated by Dr. Robert Spray. Tr. 454-461. Plaintiff stated that she was applying for disability due to depression, anxiety, and bipolar disorder, "along with a lot of other things." She reported some learning difficulties in school, resulting in her being placed in resource and special education classes beginning in the third grade. Plaintiff estimated that she read on a sixth grade level and had ninth grade math skills. She stated that she had been physically, sexually, and mentally abused by a former boyfriend, and that her father was physically abusive to her mother. Plaintiff reported experiencing flashbacks of her father beating her mother and of the abuse she suffered from her ex-boyfriend.

At the time of the exam, Plaintiff's mood was depressed, her affect blunted with no smile, her speech normal, and her thoughts logical and relevant. She reported no suicidal ideations in the last two

5

years.  Dr. Spray noted that Plaintiff had a depressed mood with a history suggestive of episodes of elevated mood or irritability.  He did not find her to be mentally retarded.  However, Dr. Spray did find evidence of somatization disorder, PTSD, social anxiety, and OCD, which he did not find to significantly interfere with her daily functioning.  He felt that her primary disabling condition was bipolar disorder, and assessed her with a GAF of 37-47.  Her short-term immediate memory was impaired, but she had good delayed recall.  Plaintiff's ability to reason was clouded by her level of anxiety and distrust of others.  Her ability to concentrate and persist was noted to also possibly be susceptible to intrusive thoughts.  She also experienced interference from anxiety-based and affectively-based symptoms that could result in a slower pace and an inability to complete tasks in a timely manner.  He then noted she would not be able to manage funds without assistance.  Tr. 454-461.

Beginning in February 2008, Plaintiff was treated by Dr. Brent Witherington at Perspectives Behavioral Health Management ("Perspectives").  Tr. 697-710.  Plaintiff reported feelings of hopelessness and worthlessness, difficulty sleeping, anhedonia, guilty feelings, anger, problems concentrating, low energy, and a variable appetite.  She also suffered from rapid mood swings, irritability, impulsive behaviors, risk-taking behavior such as cheating on her husband without protection and failing to advise him of this and experimenting with drugs, auditory hallucinations, nightmares, and flashbacks.  Dr. Witherington diagnosed her with bipolar disorder, PTSD, sexual abuse as a child, asthma, a learning disorder, and tobacco abuse.  He noted her GAF to be 45, with her highest over the past year being 51.  His treatment plan included the addition of Depakote ER to target her mood swings, discontinuation of the Lexapro until her mood had stabilized, the addition of Prazosin for nightmares, and psychotherapy.  Dr. Witherington noted that her weaknesses were hobbies, habits, socialization skills, intellectual functioning, physical activity, sense of humor, communication, and compliance with medication.  Tr. 697-710.

AO72A
(Rev. 8/82)

In June 2008, Plaintiff began seeing Dr. Witherington once every two weeks.  It appears that her condition did improve some between June 2008 and October 2008, however, anxiety, irritability, nightmares, and difficulty sleeping remained persistent.  Tr. 688-696, 711.  And, Dr. Witherington continued to assess Plaintiff with a GAF in the 40s, the highest being 49 in September 2008.  We note that a GAF score between 41 and 50 is indicative of serious symptoms or a serious impairment in social, occupational, or school functioning.  *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed. 2000).

On November 7, 2008, Amber Waite, Plaintiff's counselor at Perspectives, completed a medical source statement.  Tr. 755-756.  She indicated that Plaintiff's ability to work with or near others without being distracted by them and travel in unfamiliar places or use public transportation was poor.  Further, her ability to understand, carry out, and remember detailed instructions; maintain attention and concentration for extended periods; perform activity within a schedule, maintain regular attendance, and be punctual; sustain an ordinary routine without special supervision; make simple work-related decisions, complete a normal workday and workweek; perform at a consistent pace; interact appropriately with the public; ask simple questions or request assistance; and, set realistic goals or make plans independently of others was only fair.  Ms. Waite noted that Plaintiff's current diagnoses were bipolar disorder, anxiety disorder, PTSD, and a learning disorder.  Tr. 755-756.

The ALJ dismissed Ms. Waite's assessment because it was "not clear what is meant by the term 'most of the time' with regard to good ability or by the term 'some of the time' with regard to fair ability."  Tr. 17.  Noting that the form Ms. Waite used to indicate Plaintiff's abilities is the standard medical source statement filed in most cases, if the ALJ had a question concerning the definition of the terms "most" and "some", we believe the ALJ had a duty to recontact Ms. Waite to further develop the record in this regard.

7

The ALJ also relies heavily on the fact that Plaintiff denied experiencing depression, racing thoughts, rapid mood swings, hallucinations, or suicidal thoughts beginning in August 2008 and ignores the GAF scores assigned by Dr. Witherington.  However, in so doing, she failed to note that Plaintiff continued to report experience anxiety, irritability, and nightmares related to her PTSD.  Thus, given the GAF ratings imposed by Dr. Witherington and assessment findings of Ms. Waite, the ALJ was arguably on notice of the need to clarify Plaintiff's mental RFC with her treating psychiatrist and therapist.  *See Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) (social security hearing is non-adversarial proceeding, and ALJ has duty to develop record fully; duty may include seeking clarification from treating physicians if crucial issue is undeveloped or underdeveloped); *Garza v. Barnhart*, 397 F.3d 1087, 1089-90 (8th Cir. 2005) (per curiam) (ALJ's duty to develop record fully and fairly exists even when claimant is represented by counsel).  Accordingly, remand is necessary.

On remand, the ALJ should recontact Dr. Witherington and Ms. Waite and ask them to complete mental RFC assessments.  If additional questions should surface regarding their assessments, the ALJ is directed to address those issues with the mental health professionals prior to rendering a new decision.

V.      **Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 2nd day of February 2012.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)